

PLAINTIFF'S EXHIBIT A

## Contract for Deed

**Notice of confidentiality rights:** If you are a natural person, you may remove or strike any or all of the following information from any instrument that transfers an interest in real property before it is filed for record in the public records: your Social Security number or your driver's license number.

### Terms

Date: August 12, 2013

Seller: George M. Lee

Seller's Mailing Address: 5353 West Alabama #610, Houston, TX 77056

Buyer: Jetall Companies, Inc.

Buyer's Mailing Address: 2500 West Loop South, Suite 255, Houston, TX 77027

Property (including any improvements):

A FIELDNOTE DESCRIPTION of a tract of land located in Harris County, Texas, being Lot 19, Block 2 of Rivercrest Addition as recorded in Volume 21, Page 70 of the said County Map Records, Save & Except that certain part as recorded under Clerks File No. D-512061 of the said County Real Property Records, said Remainder Tract being more particularly described by metes and bounds as follows:
COMMENCING at the East common corner of Lot 18 and said Lot 19, said point on the West right-of-way line of Rivercrest Drive (60-foot R.O.W.);
THENCE, in a southeasterly direction along said West line following the arc of a curve to the right with a radius distance of 1072.22 feet and a call total arc length of 73.50 feet to a 1/2-inch iron rod with cap found for the POINT OF BEGINNING of the herein described tract of land;
THENCE, in a southeasterly direction along said West line following the arc of a curve to the right with a radius distance of 1072.22 feet and a total arc length of 400.00 feet to a 1/2-inch iron pipe found for corner;
THENCE, South 71° 06' 35" West, (call South 71° 13' 00" West), along the common line of Lot 20 and said Lot 19, a distance of 579.47 feet (call 580.80 feet) to a 1/2- inch iron rod with cap set for corner;
THENCE, North, along the common line of Lot 16 and said Lot 19, a distance of 224.00 feet to a 1/2-inch iron rod with cap set for corner;
THENCE, North 47° 55' 52" East, (call North 48° 07' 53" East), along the South line of said Save and Except Tract, a distance of 433.33 feet (call 434.12 feet) to the POINT OF BEGINNING and containing 3.489-acres more or less as shown in File No. 15-6495 in the office of U. S. Surveying Company, Inc., Houston, Texas.



EXHIBIT 4

together with all buildings, improvements, and fixtures; all rights, privileges, and appurtenances pertaining to the Property, including Seller's right, title, and interest in any minerals, utilities, adjacent streets, alleys, strips, gores, easements, and rights-of-way; Seller's interests in all leases, rents, and security deposits for all or part of the Property; Seller's interest in all licenses and permits related to the Property; Seller's interests in all third party warranties or guaranties, if transferable, relating to the Property or any fixtures; Seller's interest in any trade names, if transferable, used in connection with the Property; and Seller's tangible personal property located on the Property that is used in connection with the Property's operation (collectively referred to herein as the "Property").

Reservations from Conveyance: None.

Exceptions to Conveyance and Warranty:

1. Grantee assumes payment of all taxes.
2. All of the exceptions contained in Schedule B of Stewart Title Company title commitment issued under GF 1320169363 issued August 5, 2013, with an effective date of July 24, 2013.
3. Any matters created by actions of Buyer.

Sale Price: The Sales Price shall be the sum of: (i) $1,500,000.00; plus (ii) a 7% price escalator beginning on the date hereof and accruing each day. The price escalator is not compounded and shall be computed by multiplying 7% times $1,500,000.00 and divided by 365 days.

Down Payment: -0-

Annual Interest Rate: 5.0% per annum calculated on the amount of $1,500,000.00.

Monthly Payment Amount: Accrued interest only shall be due and payable on a monthly basis, commencing September 12, 2013, and continuing on the twelfth (12th) day of each month thereafter until the Maturity Date.

The Sales Price shall be due and payable on or before the Maturity Date, together with any unpaid accrued interest. Payments will be applied first to accrued interest and the remainder to reduction of the Sales Price. Buyer may prepay the Sales Price in any amount at any time before the Maturity Date without penalty or premium. If any installment becomes overdue for more than ten days, at Seller's option a late payment charge of 5% of the amount of the payment may be charged in order to defray the expense of handling the delinquent payment.

Place for Payment: 5353 West Alabama #610, Houston, Texas 77056

Date of First Monthly Payment: September 12, 2013.

Maturity Date: August 12, 2015.

Purchase Money Loan/Lien: Seller has obtained a purchase money loan secured by various security instruments on the Property- Vendor's lien and superior title retained in deed dated 8-13-13 and recorded in County Clerk File No. 20130434260 of the real property records of Harris County, Texas, securing the payment of a note of even date in the principal amount of $1,240,000.00, additionally secured by a deed of trust of even date to ROBERT R. FRANKLIN, JR. trustee, recorded in County Clerk File No. 20130434261 of the real property records of Harris County, Texas; additionally secured by Assignment of Rents recorded in County Clerk File No. _____ of the real property records of Harris County, Texas; and additionally secured by a UCC Financing Statement recorded in County Clerk File No. _____ of the real property records of Harris County, Texas.

Lienholder: Vista Bank Texas, 4690 Sweet Water Blvd., Suite 100, Sugar Land, Texas 77479 (281) 325-5050.

**Clauses and Covenants**

A.  Buyer agrees to—

  1.  Purchase the Property from Seller.

  2.  Pay Seller the Sale Price as follows:

      a.  the Sales Price plus interest at the Annual Interest Rate from the date of this contract, in installments of interest only in the Monthly Payment Amount at the Place for Payment, or at such other place as Seller may direct, beginning on the Date of First Monthly Payment and continuing regularly on the same day of each following month until the Maturity Date when the entire Sales Price plus all accrued and unpaid interest is due and payable. All unpaid amounts are due on or by the Maturity Date. Payments will be applied first to accrued interest and the remainder to the principal balance.

  3.  Pay, when due, all taxes and assessments on the Property after the date of this contract and furnish Seller copies of paid tax receipts annually. Taxes for the current year will be prorated as of the date of this contract. Alternatively, Seller at its option may advance funds to pay the taxes and assessments on the Property and be reimbursed by the Buyer within twenty

days of the date Seller provides Buyer proof of payment of the taxes and assessments. For the 2013 real estate taxes, Seller has set aside $14,869.63 which represents the proration for 2013 through the date hereof based on present available tax estimates. Seller will send Buyer a bill prior to the end of the year for Buyer's share of the actual 2013 real estate taxes. Buyer will remit Buyer's share of the taxes to Seller who will then pay the 2013 taxes.

    4.    Maintain a property insurance policy covering all improvements on the Property and providing for general liability on the Property with Seller as a named insured and containing coverage amounts and other clauses as are reasonably required by Seller. Buyer will comply with the requirements of the policy. Alternatively, Seller at its option may advance funds to pay for the insurance and be reimbursed by Buyer within twenty days of the date Seller provides Buyer proof of payment of the insurance.

    5.    Keep the Property free of nuisances, and free of citations for ordinance violations.

    6.    Allow Seller and Seller's agents to enter the Property at reasonable times to inspect the Property.

    7.    Reimburse Seller on demand if Buyer fails to perform Buyer's obligations and Seller incurs expenses, including attorney's fees, to perform or enforce them. Seller may instead elect to add such amounts to the principal balance and accrue interest at the Annual Interest Rate from the date of advancement.

    8.    Pay a late charge on any monthly payment Seller does not receive by the tenth day after it is due equal to the lesser of 5 percent of the late payment or the actual administrative cost of processing the late payment.

    9.    Obey all laws, ordinances, and restrictive covenants applicable to the Property.

    10.    Accept the Property in its present condition "AS IS," after having inspected the Property to Buyer's satisfaction.

    11.    Indemnify, defend, and hold Seller harmless from any loss, attorney's fees, court and other costs, other expenses, or claims arising out of Buyer's use of the Property.

    12.    Pay any additional ad valorem taxes and interest that become due as a penalty because of this transfer of the Property or a subsequent change in its use.

    13.    Pay for an Owner's Policy of Title Insurance upon the payment of the Sales Price to Seller.

    14.    <u>Remodel and renovate the Property and obtain all necessary City of Houston inspection approvals on or before August 12, 2014, or sell the Property</u>.

**B.**    **Buyer agrees not to—**

      1.      Create or permit a nuisance or store, use, manufacture, or dispose of any hazardous substances, hazardous waste, toxic substance, or petroleum in, on, or under the Property.

      2.      Transfer Buyer's rights in this contract or the Property without the prior written consent of Seller.

      3.      Create or permit any lien on Buyer's interest in the Property.

**C.**      **Seller agrees to—**

      1.      Sell the Property to Buyer.

      2.      After Buyer has paid all amounts due under this contract, deliver to Buyer a general warranty deed subject to the exceptions reflected herein and contemporaneously pay off the Purchase Money Loan.

      3.      Reimburse Buyer for Seller's prorated share of taxes when tax statements for the current year of 2013 are received.

      4.      Make timely payments on the Purchase Money Loan, and upon request of Buyer, provide reasonable information to Buyer regarding the payments made.

      5.      Not later than the third day Seller receives or has actual knowledge of a document or event described below, notify Buyer in writing in fourteen-point type that Seller has been sent a notice of default, notice of acceleration, or notice of foreclosure or has been sued in connection with the Purchase Money Lien and attach a copy of all related documents received to the written notice.

      6.      If Seller does not make timely payments on the Purchase Money Loan or any other indebtedness secured by the Property, permit Buyer to, without notice, cure any deficiency with Lienholder or any other holder of a lien against the Property directly and deduct from the total amount outstanding on the Original Principal Balance, without the necessity of judicial action, the amount paid to Lienholder or any other holder of a lien against the Property.

      7.      If the holder of the Purchase Money Loan/Lien does not consent to the existence of this contract for deed and as a result accelerates the maturity of the Purchase Money Loan/Lien, Seller shall pay the Purchase Money Loan/Lien in full in a timely manner.

Seller agrees that so long as Buyer is not in default Seller will not modify the Purchase Money Loan/Lien without Buyer's prior written approval. Seller shall have the right to replace the Purchase Money Loan/Lien with a note of equal or more favorable terms without the consent of Buyer.

D.  **Seller agrees not to—**

   1.   Create or permit additional liens on the Property after the date of this contract.

   2.   Interfere with Buyer's right of possession of the Property as long as Buyer timely performs Buyer's obligations in this contract.

E.  **Buyer and Seller agree to the following:**

   1.   *Default by Buyer/Events.*   Defaults by Buyer are failing to timely pay the Monthly Payment Amount or perform Buyer's other obligations in this contract within fifteen days after delivery of written notice. To avoid enforcement of Seller's remedy, Buyer must comply with the terms of this contract up to the date of compliance specified in the written notice.

   2.   *Default by Buyer/Seller's Remedies.*   On Buyer's default, Seller may invoke any remedies permitted by law, including declaring the unpaid principal balance and accrued interest immediately due and enforcing their collection, or canceling this contract, declaring Buyer's interest under this contract forfeited, and retaining all money paid by Buyer under this contract as liquidated damages due to the inconvenience and difficulty of determining Seller's actual damages.

   3.   *Default by Seller/Events.*   Defaults by Seller are failing to perform Seller's obligations in this contract within fifteen days after delivery of written notice.

   4.   *Default by Seller/Buyer's Remedies.*   On Seller's default, Buyer may terminate this contract and sue for damages, or enforce performance of this contract.

   5.   *After Cancellation.*   Buyer will vacate the Property following cancellation of this contract, and, failing to do so, Buyer will be a tenant at will, subject to an action in forcible detainer.

   6.   *Recitals Presumed True.*   If Seller cancels this contract, Seller may execute an affidavit stating facts evidencing default and forfeiture and the recitals in the affidavit will be presumed true.

   7.   *Future Improvements/Abandonment.*   If Seller cancels this contract and forfeits Buyer's interest under this contract, Buyer's permanent improvements and any abandoned personal property of Buyer will become the property of Seller.

   8.   *Prepayment.*   Buyer may prepay before maturity all or any part of the principal balance without penalty.

   9.   *Title.*   Buyer will acquire legal title to the Property only when Seller delivers the warranty deed.

10.   *Attorney's Fees.*   If either party retains an attorney to enforce this contract, the party prevailing in litigation is entitled to recover reasonable attorney's fees and court and other costs.

11.   *Entire Agreement.*   This contract and any exhibits are the entire agreement of the parties concerning the sale of the Property by Seller to Buyer. There are no representations, warranties, agreements, or promises pertaining to the Property or the sale of the Property by Seller to Buyer, and Buyer is not relying on any statements or representations of any agent of Seller, that are not in this contract and any exhibits.

12.   *Amendment of Contract.*   This contract may be amended only by an instrument in writing signed by the parties.

13.   *Notices.*   Any notice required or permitted under this contract must be in writing. Any notice required by this contract will be deemed to be delivered (whether actually received or not) when deposited with the United States Postal Service, postage prepaid, certified mail, return receipt requested, and addressed to the intended recipient at the address shown in this contract. Subject to provisions of chapter 5 of the Texas Property Code, notice may also be given by regular mail, personal delivery, courier delivery, facsimile transmission, or other commercially reasonable means and will be effective when actually received. Any address for notice may be changed by written notice delivered as provided herein.

14.   *Waiver of Default.*   It is not a waiver of default if the nondefaulting party fails to declare immediately a default or delays in taking any action. Pursuit of any remedies set forth in this contract does not preclude pursuit of other remedies in this contract or provided by law.

15.   *Usury.*   Interest on the debt secured by this contract will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law; any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides other provisions in this and all other instruments concerning the debt.

16.   *Venue.*   Venue is in Harris County, Texas where the Property is located.

17.   *Successors.*   This contract binds, benefits, and may be enforced by the successors in interest of the parties, except as otherwise provided.

18.   *Construction.*   When the context requires, singular nouns and pronouns include the plural.

19.   *Commercial Transaction.*   Buyer warrants that the extension of credit evidenced by this agreement is solely for business or commercial purposes, other than agricultural purposes. The Buyer further warrants that the credit transaction evidenced by this agreement is specifically exempted under Regulation Z issued by the Board of Governors of the Federal

Reserve System and Title I of the Consumer Credit Protection Act and that no disclosures are required to be given under such regulations and federal laws in connection with the above transaction. Buyer does not claim nor will claim any part of the Property as residential or business homestead.

Buyer acknowledges that the Property is not habitable on the date hereof.

Buyer represents and warrants that Buyer and Buyer's officers, directors, shareholders and employees and anyone related to them within the second degree by consanguinity or affinity WILL NOT use the Property as a residence nor occupy the Property.

Buyer represents that Buyer's officers, directors, shareholders and employees and anyone related to them within the second degree by consanguinity or affinity have not heretofore been a Tenant on the Property.

Buyer acknowledges and represents that there is no lease agreement between Seller and Buyer.

Buyer is familiar with the Property and has undertaken appropriate due diligence on the Property including a review of title and survey. Buyer previously entered into an earnest money contract with prior owners to acquire the Property.

20. *Property size.* Seller and Buyer agree that the Property contains more than one acre of land.

21. *Buyer is represented by a licensed attorney.*

THIS EXECUTORY CONTRACT REPRESENTS THE FINAL AGREEMENT BETWEEN THE SELLER AND PURCHASER AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

Executed by both parties on the date first written above.

BUYER:

Jetall Companies, Inc., a Texas corporation,

_____
Ali Choudhri, President


SELLER:

_____
George M. Lee


For value received, I, Ali Choudhri, absolutely, irrevocably, and unconditionally guarantee payment of this Contract for Deed according to its terms to the same extent as if I were Buyer on this Contract for Deed. Except for copies of default notices sent to Buyer which shall be contemporaneously delivered to the undersigned, I waive all demands and all notices, including notice of intention to accelerate maturity, notice of acceleration of maturity, notice of nonpayment or default, presentment for payment, protest, notice of protest, suit, and diligence. I also waive any notice of and defense based on the extension of time of payment or change in methods of payment or the release of any collateral securing this Contract for Deed and consent to all renewals, extensions, and other adjustments in the manner of payment of this note and any transfer of this Contract for Deed to any third party. This is an unconditional guaranty of payment and performance, not of collection, and it is an agreement of guaranty, not of suretyship. I waive all requirements of law, if any, that any collection efforts be made against Buyer or that any action be brought against Buyer before resorting to this guaranty.

_____
Ali Choudhri

## Modification and Extension Agreement

### Basic Information

**Date:** August 12, 2015

**Seller:** George M. Lee

**Seller's Mailing Address:**

>George M. Lee
>5353 West Alabama #610
>Houston, TX 77056

**Buyer:** Jetall Companies, Inc., a Texas corporation

**Buyer's Mailing Address:**

>Jetall Companies, Inc.
>2500 West Loop South, Suite 255
>Houston, TX 77056

**Contract For Deed**

>**Date:** August 12, 2013
>
>**Buyer:** Jetall Companies, Inc., a Texas corporation
>
>**Seller:** George M. Lee
>
>**Maturity date:** August 12, 2015

**Property (including any improvements):**
A FIELDNOTE DESCRIPTION of a tract of land located in Harris County, Texas, being Lot 19, Block 2 of Rivercrest Addition as recorded in Volume 21, Page 70 of the said County Map Records, Save & Except that certain part as recorded under Clerks File No. D-512061 of the said County Real Property Records, said Remainder Tract being more particularly described by metes and bounds as follows:
COMMENCING at the East common corner of Lot 18 and said Lot 19, said point on the West right-of-way line of Rivercrest Drive (60-foot R.O.W.);
THENCE, in a southeasterly direction along said West line following the arc of a curve to the right with a radius distance of 1072.22 feet and a call total arc length of 73.50 feet to a 1/2-inch iron rod with cap found for the POINT OF BEGINNING of the herein described

1

tract of land;
THENCE, in a southeasterly direction along said West line following the arc of a curve to the right with a radius distance of 1072.22 feet and a total arc length of 400.00 feet to a 1/2-inch iron pipe found for corner;
THENCE, South 71° 06' 35" West, (call South 71° 13' 00" West), along the common line of Lot 20 and said Lot 19, a distance of 579.47 feet (call 580.80 feet) to a 1/2- inch iron rod with cap set for corner;
THENCE, North, along the common line of Lot 16 and said Lot 19, a distance of 224.00 feet to a 1/2-inch iron rod with cap set for corner;
THENCE, North 47° 55' 52" East, (call North 48° 07' 53' East), along the South line of said Save and Except Tract, a distance of 433.33 feet (call 434.12 feet) to the POINT OF BEGINNING and containing 3.489-acres more or less as shown in File No. 15-6495 in the office of U. S. Surveying Company, Inc., Houston, Texas.

**Extended Maturity Date of Contract For Deed:** August 12, 2016

**Modified Terms:**
"Sales Price": The Sales Price shall be the sum of: (i) $1,710,000.00; plus (ii) a 7% price escalator beginning on August 12, 2015 and accruing each day thereafter. The price escalator is not compounded and shall be computed by multiplying 7% times $1,710,000.00 and divided by 365 days.

"Annual Interest Rate": 5.0% per annum calculated on the amount of $1,710,000.00

"Monthly Payment Amount": Accrued interest only shall be due and payable on a monthly basis, on the twelfth (12th) day of each month until the Extended Maturity Date. Interest for the time period beginning August 12, 2015, shall be calculated based on the Annual Interest Rate as modified herein and is calculated to be $7,125.00 per month. On September 12, 2015, the Monthly Payment Amount due is $7, 125.00, and that Monthly Payment Amount continues to be due and payable on the same day of each month thereafter until the Extended Maturity Date.

### Buyer's Covenants and Warranties

Buyer agrees to pay the amount specified in the Contract For Deed as modified herein and comply with the obligations expressed in the Contract For Deed and as modified herein.

For value received, Buyer renews the Contract For Deed and promises to pay to the order of Seller, according to the Modified Terms, the Sales Price and Monthly Payment Amount on the Contract For Deed. All unpaid amounts are due by the Extended Maturity Date of the Contract For Deed.

The Contract For Deed continue as written, except as provided in this agreement.

Buyer warrants to Seller that the Contract For Deed, as modified, is valid and enforceable and represents that they are not subject to rights of offset, rescission, or other claims.

Terms used herein, which are not otherwise defined or modified herein, but which are

2

defined in the Contract For Deed, shall have the meanings therein ascribed to them.

When the context requires, singular nouns and pronouns include the plural.

Buyer will reimburse Seller for the legal expenses related to the preparation of this document.

_____
George M. Lee

Jetall Companies, Inc., a Texas corporation,

_____
Ali Choudhri, President

Consent by Guarantor:

_____
Ali Choudhri

3

1

## Modification and Extension Agreement

### Basic Information

**Date:** October 22, 2016

**Seller:** George M. Lee

**Seller's Mailing Address:**

> George M. Lee
> 5353 West Alabama #610
> Houston, TX 77056

**Buyer:** Jetall Companies, Inc., a Texas corporation

**Buyer's Mailing Address:**

> Jetall Companies, Inc.
> 2500 West Loop South, Suite 255
> Houston, TX 77056

**Contract For Deed**

> **Date:** August 12, 2013
>
> **Buyer:** Jetall Companies, Inc., a Texas corporation
>
> **Seller:** George M. Lee
>
> **original Maturity date:** August 12, 2015, and subsequently extended to August 12, 2016 by written agreement dated August 12, 2015.

**Property (including any improvements):**
A FIELDNOTE DESCRIPTION of a tract of land located in Harris County, Texas, being Lot 19, Block 2 of Rivercrest Addition as recorded in Volume 21, Page 70 of the said County Map Records, Save & Except that certain part as recorded under Clerks File No. D-512061 of the said County Real Property Records, said Remainder Tract being more particularly described by metes and bounds as follows:
COMMENCING at the East common corner of Lot 18 and said Lot 19, said point on the West right-of-way line of Rivercrest Drive (60-foot R.O.W.);
THENCE, in a southeasterly direction along said West line following the arc of a curve to

*Modification and Extension Agreement.E. Rivercrest. to Aug 2017*

the right with a radius distance of 1072.22 feet and a call total arc length of 73.50 feet to a 1/2-inch iron rod with cap found for the POINT OF BEGINNING of the herein described tract of land;

THENCE, in a southeasterly direction along said West line following the arc of a curve to the right with a radius distance of 1072.22 feet and a total arc length of 400.00 feet to a 1/2-inch iron pipe found for corner;

THENCE, South 71° 06' 35" West, (call South 71° 13' 00" West), along the common line of Lot 20 and said Lot 19, a distance of 579.47 feet (call 580.80 feet) to a 1/2- inch iron rod with cap set for corner;

THENCE, North, along the common line of Lot 16 and said Lot 19, a distance of 224.00 feet to a 1/2-inch iron rod with cap set for corner;

THENCE, North 47° 55' 52" East, (call North 48° 07' 53" East), along the South line of said Save and Except Tract, a distance of 433.33 feet (call 434.12 feet) to the POINT OF BEGINNING and containing 3.489-acres more or less as shown in File No. 15-6495 in the office of U. S. Surveying Company, Inc., Houston, Texas.

**Extended Maturity Date of Contract For Deed:** August 12, 2017

**Modified Terms:**

The Maturity Date is extended to August 12, 2017 when the Sales Price is due and payable in full. This is the final extension that will be agreed to by the Seller.

On February 12, 2017, if Buyer has not acquired the property, then Buyer must pay Seller $150,000.00 to apply to the "Sales Price", and it is not refundable. This amount shall NOT apply to the price escalator.

Otherwise, the terms of the Modification dated August 12, 2015 and executed by all parties continues.

### Buyer's Covenants and Warranties

Buyer agrees to pay the amount specified in the Contract For Deed as modified herein and comply with the obligations expressed in the Contract For Deed and as modified herein.

For value received, Buyer renews the Contract For Deed and promises to pay to the order of Seller, according to the Modified Terms, the Sales Price in the Contract For Deed. The Sales Price is due by the Extended Maturity Date of the Contract For Deed.

The Contract For Deed continue as written, except as provided in this agreement.

Buyer warrants to Seller that the Contract For Deed, as modified, is valid and enforceable and represents that they are not subject to rights of offset, rescission, or other claims.

Terms used herein, which are not otherwise defined or modified herein, but which are defined in the Contract For Deed, shall have the meanings therein ascribed to them.

*Modification and Extension Agreement.E. Rivercrest. to Aug 2017*

3

When the context requires, singular nouns and pronouns include the plural.

Buyer will reimburse Seller for the legal expenses related to the preparation of this document.

Time is of the essence in the performance of all covenants.

_____
George M. Lee

Jetall Companies, Inc., a Texas corporation,

_____
Ali Choudhri, President

Consent by Guarantor:

_____
Ali Choudhri

*Modification and Extension Agreement.E. Rivercrest. to Aug 2017*