

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
06/16/2021

| | | |
|---|---|---|
| IN RE: | § | |
| **BRIAR BUILDING HOUSTON LLC** | § | **CASE NO: 18-32218** |
| Debtor | § | |
| | § | **CHAPTER  11** |
| | § | |
| **GEORGE M LEE** | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 20-3398** |
| | § | |
| **MOHAMMAD ALI CHOUDHRI** | § | |
| Defendant | § | |

## <u>MEMORANDUM OPINION</u>

George M. Lee filed the instant "Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(6), Motion to Strike under Federal Rule of Civil Procedure 12(f), Motion for a More Definite Statement of Claims under Federal Rule of Civil Procedure 12(e)" requesting that the Court dismiss certain causes of action, without the opportunity to amend, or require repleading of specified portions of Ali Choudhri and Intervenor Jetall Companies, Inc.'s counterclaims to George M. Lee's first amended complaint, under Federal Rules of Civil Procedure 12(b)(6), 12(f) and 12(e). On May 24, 2021, the Court held a hearing on Plaintiff's Motion to Dismiss and at the conclusion of the hearing, took the matter under advisement and ordered briefing.  Briefing has now closed and the matter is ripe for determination.

For the reasons set forth herein, the Court grants in part and denies in part George M. Lee's motion to dismiss.  Ali Choudhri and Intervenor Jetall Companies, Inc.'s first, second, third, and fourth counterclaims for violation of Tex. Prop. Code § 5.069; Tex. Prop. Code § 5.070; Tex. Prop. Code § 5.077; and Texas Bus. & Com. Code § 17.46 are dismissed with prejudice.  George M. Lee's request that Ali Choudhri and Intervenor Jetall Companies, Inc.'s replead their eighth

counterclaim for declaratory judgment stating that Mr. Lee has waived his claim for liquidated damages is denied.  Additionally, he Court grants Ali Choudhri and Intervenor Jetall Companies, Inc. leave to amend and replead affirmative defenses two through fourteen.  Finally, the Court denies George M. Lee's request to strike Ali Choudhri and Intervenor Jetall Companies, Inc.'s affirmative defenses one and fifteen.

## I.  Background

1.  On August 12, 2013, Ali Choudhri ("*Choudhri*") personally guaranteed Jetall's commercial contract for deed, dated August 12, 2013 ("*Contract*"), to purchase the Rivercrest Property.[1] The Contract was modified and extended, with the written consent and approval of Choudhri, by the last modification and extension dated October 22, 2016 ("*Modification*"). The Modifications extended the maturity of the original Contract for deed to August 12, 2017, at which time the full sales price and any other outstanding amounts under the Contract were due and owing.[2]

2.  On August 12, 2017, George M. Lee ("*Lee or Plaintiff*") alleges that Jetall Companies, Inc. ("*Jetall*") failed to timely and fully pay all monthly payments, property taxes, the $150,000.00 non-refundable payment, and failed to pay Plaintiff all amounts due and owing under the Contract by its termination date of August 12, 2017.[3]

3.  On September 5, 2017, Plaintiff alleges that as a result of Jetall's failure to perform the Contract, Jetall and Choudhri (together "*Defendants*") were given written notice of default and that the Contract terminated by its terms and was cancelled by Plaintiff.[4]

4.  Plaintiff further alleges that based on the terms of the Contract and his personal guaranty, Choudhri is in material default on his guaranty in the amount of all monthly interest payments of $6,250, starting September 12, 2013 through August 12, 2017, with a late fee of $312.50 on each of the monthly interest payments which were all 10 or more days late, all assessed property taxes due on or before the following January 31 of each calendar year during the Contract, and the $150,000 nonrefundable payment due on February 12, 2017. The total amount of all sums due under the guaranty is $704,384.80.[5]

5.  On April 10, 2018, BDFI, LLC ("*BDFI*") filed an Appointment of Substitute Trustee ("*Foreclosure Notice*") in the real property records of Harris County, Texas ("*Harris County Records*").[6]  The Foreclosure Notice indicated that BDFI, as senior lienholder,

---

[1] As set forth herein, "Rivercrest Property" refers to 35 E. Rivercrest, Houston, Texas 77042.
[2] ECF No. 24, Ex. C.
[3] ECF No. 24, ¶ 10.
[4] *Id*., ¶ 11.
[5] Id., ¶ 12.
[6] Bankr. ECF No. 38 (recorded under File No. RP-2018-152622).

intended to foreclose against a property located at 50 Briar Hollow Lane, Houston, Texas 77027 ("*Property*") subject to a certain Deed of Trust, dated December 30, 2013 ("*First Lien DOT*"), which had been executed by the Property's previous owner 50 Briar Hollow, LLC.[7]  The First Lien DOT secured a $20,000,000 Promissory Note, dated December 30, 2013 ("*Senior Note*"), made by 50 Briar Hollow, LLC in favor of Green Bank, N.A. ("*Green Bank*").[8]  Green Bank subsequently assigned the Senior Note, the First Lien DOT, and certain related liens and other documents to BDFI on March 9, 2018, pursuant to an Assignment and Assumption Agreement, dated March 9, 2018 ("*Assignment*").[9]  The Assignment was recorded in the Harris County Records on March 12, 2018.[10]

6.  On April 30, 2018, Briar Building Houston, LLC ("*Debtor*") filed a Chapter 11 petition ("*Petition*").[11]  At the time of filing, Debtor's main asset was the Property.  Lee owns one hundred percent (100%) of the membership interests of the Debtor.[12]  Lee previously owned the Property individually but transferred the Property to Debtor pursuant to a Special Warranty Deed dated April 4, 2018 ("*April 4, 2018 Deed*"), which was recorded on April 5, 2018.[13]  In exchange for the April 4, 2018 Deed, Debtor gave Lee a $3,150,000 Promissory Note ("*Junior Note*") and granted Lee a Deed of Trust, Security Agreement-Financing Statement, dated April 5, 2018 ("*Second Lien DOT*"), against the Property to secure the Junior Note.[14]  The Second Lien DOT was recorded in the Harris County Records on April 5, 2018.[15]  Lee was therefore a junior lienholder against the Property as well as the Debtor's sole equity owner.[16]

7.  On May 4, 2018, a dispute arose regarding, inter alia, Debtor's use of cash collateral.[17]  Nevertheless, on May 11, 2018, Debtor, Lee, and BDFI resolved their differences regarding the Property, which resulted in Debtor filing a Motion to Compromise on May 15, 2018, setting forth a Forbearance Agreement ("*Motion to Compromise*").[18]  Debtor asked the Court to approve it, along with a Motion to Dismiss the Chapter 11 Proceeding.[19]  Attached to the Order approving the Motion to Compromise was a fully executed copy of an agreement between the parties dated May 11, 2018 ("*May 11, 2018 Forbearance Agreement*").[20]  After conducting an evidentiary hearing on May 22, 2018, the Court approved

---

[7] Bankr. ECF No. 1-1 (in the Harris County Records under File No. 20130647992).

[8] *Id.*

[9] *Id.*

[10] *Id.* (in the Harris County Records under File No. RP-2018-102728).

[11] Citations to the docket in this adversary proceeding styled *George M. Lee vs. BDFI, LLC et al.* 20-3398 (the "*Adversary Proceeding*"), shall take the form "ECF No. ——," while citations to the bankruptcy case, 18-32218 (the "*Bankruptcy Case*"), shall take the form "Bankr. ECF No. ——."; Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.

[12] Bankr. ECF No. 29.

[13] *Id.* (in the Harris County Records under File No. RP-2018-144450).

[14] *Id.*

[15] *Id.* (in the Harris County Records under File No. RP-2018-144451).

[16] *Id.*

[17] Bankr. ECF No. 18.

[18] Bankr. ECF Nos. 29, 30.

[19] *Id.*

[20] Bankr. ECF No. 38.

the Motion to Compromise ("*May 22, 2018 Order*") and the Motion to Dismiss.[21]   The bankruptcy case was dismissed on the same date.

8. After the bankruptcy case was dismissed, Lee filed two separate law suits in state court, to wit: (i) filed on March 10, 2020, is Cause No. 2020-16175 *George M. Lee v. Mohammad Ali Choudhri* in the 152nd Judicial District Court, Harris County, Texas ("*West Loop Lawsuit*"), which involves a dispute regarding Choudhri's personal guarantee on a loan made by Plaintiff regarding a commercial real property located at 1001 West Loop L.P. South, Houston, Texas and in which Plaintiff seeks damages in the amount of $4,219,951.30 ("*Adversary Proceeding No. 20-3395* or the *West Loop South Property Lawsuit*"), and (ii) filed on March 30, 2020, is Cause No. 2020-20053 *George M. Lee v. Mohammad Ali Choudhri* in the 215th Judicial District Court, Harris County, Texas ("*Rivercrest Lawsuit*"), which involves a dispute regarding Choudhri's personal guarantee on the Contract for the purchase of the Rivercrest Property by Jetall and in which Plaintiff seeks damages in the amount of $704,384.80 ("*Adversary Proceeding No. 20-3398* or the *Rivercrest Property Lawsuit*").

9. The two state court suits were removed to this Court on August 19, 2020, and August 21, 2020, respectively.[22]

10. On February 1, 2021, Plaintiff filed his First Amended Complaint.[23]

11. On March 1, 2021, Defendants filed their Answer to Plaintiff's First Amended Complaint and Counterclaims ("*Answer*" or "*Counterclaim(s)*").[24]

12. On March 22, 2021, Plaintiff filed the instant "Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(6), Motion to Strike under Federal Rule of Civil Procedure 12(f), Motion for a More Definite Statement of Claims under Federal Rule of Civil Procedure 12(e)" requesting that the Court dismiss certain causes of action, without the opportunity to amend, or require repleading of specified portions of Ali Choudhri and Intervenor Jetall Companies, Inc.'s Counterclaims to George M. Lee's First Amended Complaint, under Federal Rules of Civil Procedure 12(b)(6), 12(f) and 12(e) ("*Motion To Dismiss*").[25]

13. On April 12, 2021, Defendants filed their response to the Motion to Dismiss ("*Response*").[26]

14. On May 6, 2021, Plaintiff filed a reply to the Response ("*Reply*").[27]

15. On June 7, 2021 Defendants filed their supplemental brief ("*Supplemental Brief*").[28]

---

[21] Bankr. ECF Nos. 38, 39.
[22] 20-3395, ECF No. 1; 20-3398, ECF No. 1.
[23] ECF No. 24.
[24] ECF No. 25.
[25] ECF No. 26.
[26] ECF No. 30.
[27] ECF No. 33.
[28] ECF No. 38.

16. On June 14, 2021 Plaintiff filed his response to Defendants' supplemental brief ("*Responsive Brief*")."[29]

## II.   Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[30]  This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A), this Adversary Proceeding contains core matters because the complaint primarily asserts claims and seeks relief under the United States Bankruptcy Code, including jurisdiction to interpret and enforce its own orders.[31]  The jurisdictional issue in this case centers on this Court enforcing its May 22, 2018 Order by adjudicating the instant adversary proceeding.[32]

Furthermore, this Court may only hear a case in which venue is proper.[33]  Pursuant to 28 U.S.C. § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." This Court presided over Debtor's main bankruptcy proceeding Briar Building Houston, LLC.[34]  Therefore, venue is proper.

## III.   Constitutional Authority to Enter Orders

This Court must evaluate whether it has constitutional authority to enter an order in this case.  In *Stern,* which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional

---

[29] ECF No. 39.
[30] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[31] *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934)).
[32] *See* 28 U.S.C. § 157(b).
[33] 28 U.S.C. § 1408.
[34] Bankr. Case No. 18-32218.

authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."[35] However, *Stern* is inapplicable to the instant case. *Stern* concerned final orders entered by the bankruptcy court and here, the Court need only enter an interlocutory order because motions to dismiss pursuant to Rule 12(b)(6), motions to strike pursuant to Rule 12(f) and motions for more definite statements pursuant to Rule 12(e) like the instant motion filed by Plaintiff, are interlocutory. Entering an interlocutory order does not implicate "the constitutional limitations on the Court's authority to enter final judgments."[36] Therefore, this Court need not determine whether it has constitutional authority to enter a final order because an interlocutory order is all that is required by the instant case.[37]

## IV.   Analysis

### A. Standard of Review for Motions to Dismiss Under Federal Rules of Civil Procedure 12(b)(6) with respect to Counterclaims

Ordinarily, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must clear two hurdles. First, the complaint must describe the claim in enough detail to give fair notice of the claim and the grounds for it.[38] "[A] formulaic recitation of the elements of a cause of action will not do."[39] Specifics are unnecessary, but each element must be supported by some facts.[40] Second, the complaint must state a claim "plausible on its face,"[41] meaning the plaintiff's right to relief must rise above a "speculative level."[42] Rule 8(a)(2) requires a plaintiff to plead "a

---

[35] *Stern v. Marshall*, 564 U.S. 462, 503 (2011)

[36] *West v. WRG Energy Partners LLC (In re Noram Res., Inc.)*, 2011 Bankr. LEXIS 5183, at *3 (Bankr. S.D. Tex. Dec. 30, 2011).

[37] *See Shelton v. Aguirre & Patterson, Inc. (In re Shelton)*, 2014 Bankr. LEXIS 1722, at *11 (Bankr. S.D. Tex. Apr. 18, 2014) (explaining that a bankruptcy court may not dismiss a cause of action with prejudice because that would constitute adjudication on the merits and thus a final order dismissing the plaintiff's suit. However, the court continued, a court may issue an interlocutory order even where it does not have authority to enter a final order.)

[38] *See* FED. R. CIV. P. 8(a) (made applicable by Fed. R. Bankr. P. 7008).

[39] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

[40] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[41] *Twombly*, 550 U.S. at 570.

[42] *Id.* at 555.

short and plain statement of the claim showing that the pleader is entitled to relief."[43]  In *Ashcroft v. Iqbal*, the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts . . . permit the court to infer more than the mere possibility of misconduct."[44]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[45]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[46]  Motions to dismiss are disfavored and thus, rarely granted.[47]  When considering a motion to dismiss under Rule 12(b)(6), courts accept well-pleaded allegations as true and liberally construe the complaint in favor of the plaintiff.[48]

However, the issue is not as clear cut when it comes to the standard of review for motions to dismiss counterclaims.  District courts within the Fifth Circuit are divided as to whether a fair notice standard continues to apply to pleading affirmative defenses and counterclaims, or whether *Twombly and Iqbal*'s plausibility standard applies, and the "Fifth Circuit has not addressed this issue."[49]  The pleading standard with respect to affirmative defenses is discussed *infra*.  However, as discussed herein, this Court finds that Defendants' Counterclaims satisfy both the fair notice and plausibility standards and the issue of whether *Twombly and Iqbal*'s plausibility standard also applies to counterclaims does not need to be decided.

### B.  Plaintiffs' Rule 12(b)(6) Motion to Dismiss

---

[43] FED. R. CIV. P. 8(a).

[44] *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)).

[45] *Id.* at 678.

[46] *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) ("A complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true raise a right to relief above the speculative level.") (citations omitted).

[47] *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).

[48] *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).

[49] *Davis v. Ocwen Loan Servicing LLC*, 2020 WL 1910137, at *3 (N.D. Tex. Jan. 27, 2020); *Brush v. Wells Fargo Bank, N.A.*, 911 F. Supp. 2d 445, 484 (S.D. Tex. 2012); *see Wells Fargo Bank v. Dorvee*, 2017 WL 6016304, at *1 (E.D. Tex. Oct. 26, 2017) ("The [12(b)(6)] legal standards articulated above apply to all counterclaims generally.").

In his Motion to Dismiss, Plaintiff alleges that:

1. Defendants' first, second, and third counterclaims should be dismissed because Chapter 5 of the Texas Property Code does not apply to the present transaction as a matter of law.[50]

2. Defendants' fourth counterclaim should be dismissed because it is expressly excluded from the ambit of the Texas Deceptive Trade Practices Act ("*DTPA*") as a matter of law.[51]

3. Defendants should be required to replead their eighth counterclaim which seeks a declaratory judgment that Plaintiff has waived his right to liquidated damages.

4. Defendants' affirmative defenses should be struck under Federal Rule of Civil Procedure 12(f) because Defendants did not plead sufficient facts in support of them.[52]

5. Additionally, or in the alternative, Defendants should be required to re-plead their affirmative defenses and certain causes of action under Federal Rule of Civil Procedure 12(e) because they are so vague and ambiguous that Plaintiff cannot reasonably prepare a response.

The Court will consider each ground for dismissal, in turn.

1. ***Whether Texas Property Code Chapter 5 applies to the Contract as set forth under Defendants' First, Second, and Third Counterclaims***

Defendants' first, second, and third counterclaims assert violations of the following, respectively: (i) Texas Property Code § 5.069; (ii) Texas Property Code § 5.070; and (iii) Texas Property Code § 5.077.  Plaintiff contends that these counterclaims should be dismissed because Chapter 5 of the Texas Property Code does not apply to the present transaction as a matter of law.[53] Plaintiff asserts that the aforementioned sections referenced were specifically passed to curtail the abusive monetary policies for residential property for those who did not have access to traditional mortgage financing.[54]  Citing to Texas Property Code § 5.062, Plaintiff states that the language of the statute reflects this limited scope, applying only to:

---

[50] ECF No. 26 at 3.
[51] *Id.* at 6.
[52] *Id.*
[53] *Id.* at 3.
[54] *Id.*

"a transaction involving an executory contract for the conveyance of real property used or to be used as the *purchaser's residence or as the residence of a person related to the purchaser* . . . For purposes of this subchapter, and only for the purposes of this subchapter:

> (1) *a lot measuring one acre or less is presumed to be residential property* . . . ."[55]

According to Plaintiff, the underlying documents that form the basis of Plaintiff's claims reflect that the parties intentionally excluded the conveyance of the Rivercrest Property from the protections of Chapter 5 of the Texas Property Code because "[t]he Rivercrest Property is, quite simply, a commercial building that is not used for residential purposes whatsoever."[56] Plaintiff points out that the Contract identifies the Rivercrest Property as consisting of 3.489 acres.[57] Plaintiff states that in the Contract, Jetall, a commercial property ownership company, specifically warranted that the Rivercrest Property was to be used "solely for business or commercial purpose . . . ."[58] Further, Plaintiff contends that the language is even more specific, with Defendants asserting that "Buyer acknowledges that the [Rivercrest] Property is not habitable on the date hereof" and that Jetall, and by extension Choudhri, the guarantor, "represents and warrants that Buyer . . . and anyone related to them within the second degree by consanguinity or affinity *will not* use the Rivercrest Property as a residence nor occupy the Property."[59] Plaintiff argues that this language is so specific it tracts verbatim the language of Texas Property Code § 5.062.[60] In essence, Plaintiff argues that any categorization of Rivercrest Property as a residential property should be disregarded as it contradicts the language of the underlying Contract.[61]

---

[55] TEX. PROP. CODE § 5.062 (emphasis added).
[56] ECF No. 26 at 4–5.
[57] *See* ECF No. 26-1.
[58] *Id.* at 5.
[59] *Id.* (emphasis added).
[60] *See* TEX. PROP. CODE § 5.062.
[61] ECF No. 26 at 5.

Next, Plaintiff argues that while Defendants may contend that Section E(19) of the Contract entitled "Commercial Transaction" which states that "[b]uyer warrants that the extension of credit evidenced by this agreement is solely for business or commercial purposes. . ." is "void" under Texas Property Code § 5.073(b), that section provides only that "a provision in an executory contract *that purports to waive a right or exempt a party from liability or duty under this subchapter* is void."[62]  According to Plaintiff, Section E(19) of the Contract is not a waiver of liability or duty, but rather one of the factual recitations, warranties, and representations forming the consideration for the underlying contract itself, and the plain language of the statute thus preempts such an attempted defense by Defendants.[63]  Therefore, Plaintiff concludes that because the Contract at issue places itself outside of the confines of the protections of Texas Property Code §§ 5.069, 5.070, 5.077, the first, second and third counterclaims must be dismissed.[64]

Defendants respond that the language in the Contract relied upon by Plaintiff is invalid under the Texas Property Code.[65]  In their Response, Defendants contend that § 5.073(b) expressly voids any "provision of the executory contract that purports to waive a right or exempt a party from a liability or duty" under Chapter 5.[66]  Defendants contend that "Plaintiff does not even attempt to explain how a prohibited "provision . . . that purports to waive a right or exempt a party from a liability or duty under Chapter 5, Tex. Prop. Code § 5.073(b)" differs from a factual recitation, warranty, or representation.[67]  Defendants acknowledge that not all contracts for deed meet Chapter 5's residential property requirements, but assert that Texas case law makes clear that the inquiry is factual, turns on the purchaser's subjective intent, and generally requires a jury

---

[62] *Id.;* TEX. PROP. CODE § 5.073(b) (emphasis added).
[63] *Id.* (the statute states that"[a] provision of the executory contract that purports to waive a right or exempt a party from a liability or duty under this subchapter is void.").
[64] *Id.* at 6.
[65] ECF No. 30.
[66] *Id.*; TEX. PROP. CODE § 5.073(b).
[67] *Id.*

determination.[68]  As such, Defendants conclude that when drawing all factual inferences in their

favor, the Court should deny Plaintiff's Motion to Dismiss.

As discussed *supra*, Texas Property Code § 5.062(a) governs applicability of Subchapter

D and provides that:

> [Subchapter D] applies only to a transaction involving an executory contract for conveyance of real property *used or to be used as the purchaser's residence or as the residence of a person* related to the purchaser within the second degree by consanguinity or affinity . . . .

In *Ferrara v. Nutt*, the Texas Court of Appeals affirmed the lower court's decision that Texas

Property Code § 5 did not apply to the contract between parties because there was no or insufficient

evidence that the property was being used as a residence.[69]  In that case, plaintiff lived at another

property and rented the subject property to a non-relative.  The court, however, does note that

"used or to be used" is broad language and that the express terms of § 5.062(a) encompasses real

property which is presently being used as the purchaser's residence as well as real property which

will be so used in the future.[70]  The court cites the proposition that while a purchaser's simple

statement of intent may be too weak to convince a jury that they intended to use the property as a

residence, such a statement may be enough under even a summary judgment standard.[71]

Here, Defendants' Counterclaims fit squarely within the confines of Subchapter D triggering the residential requirement.[72]  Upon examination of Defendants' Answer, Defendants state in

counterclaims one, two, and three: "[t]he property at issue was a home that Choudhri intended to

reside in."[73]  However, the Court is entitled to draw on its judicial experience and common sense

---

[68] *Id.* (citing to *Marker v.* Garcia, 185 S.W.3d 21, 27 (Tex. App. 2005)).
[69] *Ferrara v. Nutt*, 555 S.W.3d 227, 234–35 (Tex. App. 2018).
[70] *Id.* at 237.
[71] *Id.* at 238.
[72] *See* TEX. PROP. CODE § 5.062(a) (as pled, Defendants counterclaims under TEX. PROP. CODE §§ 5.069, 5.070, 5.077 are contained in Subchapter D).
[73] ECF No. 25.

when interpreting contracts at the motion to dismiss stage.[74]  The Contract attached to the Motion

to Dismiss demonstrates that this was a transaction involving a commercial, not residential, prop-

erty.  The Contract explicitly states that this agreement is "solely for business and commercial

purposes" and that the "Property is not habitable."[75]  Notably, the Contract is between seller

"George M. Lee" and buyer "Jetall Companies, Inc."[76]  Choudhri is only a guarantor of the Con-

tract.[77]

In their Supplemental Brief, Defendants assert a form over substance argument that "[t]he

labelling of Jetall as 'Buyer' and of Choudhri as guarantor in the Contract does not determine how

those parties are treated under the statutory language of Subchapter D."[78]  Defendants contend that

Choudhri is a "purchaser" for the purposes of subchapter V.[79]  Defendants reference Black's Law

Dictionary and different portions of the Texas Business & Commercial Property Code to support

their position, however, Defendants acknowledge that they "have not located any Texas cases that

directly address this issue."[80]

Plaintiff counters in his Responsive Brief that (i) plain language of Chapter Five of the

Texas Property Code makes it clear it only applies to residential executory contracts, not corporate

ones; (ii) Choudhri is a guarantor, not a purchaser; and (iii) Property which is purchased or held

by corporate entities is not entitled the same protections, such as the homestead exemption, as

those held by individuals.[81]  As pointed out by Plaintiff, the Fifth Circuit has expressly held that

---

[74] *IberiaBank Corp. v. Illinois Union Ins. Co.*, 953 F.3d 339 (5th Cir. 2020).
[75] ECF No. 26-1.
[76] *Id.* at 1.
[77] *Id.*
[78] ECF No. 38.
[79] *Id.* ("Choudhri was a 'purchaser' of the subject property, as the Texas Property Code limits the subchapter's appli-
cation to 'executory contract[s] for conveyance[s] of real property used or to be used as the purchaser's residence or
as the residence of a person related to the purchaser within the second degree by consanguinity or affinity[.]' Tex.
Prop. Code § 5.062(a).").
[80] *Id.*
[81] ECF No. 39.

"[a] guarantor does not step into the maker's shoes and thereby acquire all his rights and privileges."[82]  A guaranty agreement is a legally separate and distinct contract from the primary obligation.[83]  Further, Plaintiff asserts that there is a long-running line of cases that have held that property owned or held by a corporation is not entitled to the homestead protections of the Texas Constitution.[84]  As such, Plaintiff argues, "[b]ecause this is a fundamentally commercial transaction by a legally distinct corporate entity, the protections of the Texas Constitution and the Texas Property Code focused on residential properties generally do not apply."[85]

Here, the Court will not step outside of the four corners of the Contract to read in an alternative meaning to TEX. PROP. CODE § 5.062(a).  The Court is not persuaded by Defendants' position that Choudhri's designation as guarantor equates to a buyer under the Contract.  It is clear that the weight of authority makes a distinction between a guarantor and a purchaser.  Assuming *arguendo* that Defendants were able to clear the major hurdle and demonstrate that Choudhri was a "purchaser" under § 5.062(a), Defendants have not demonstrated how § 5.062(a)'s "residence" would reconcile with the Contract's language.  Texas law is entrenched with the notion that residential protections are not provided to property owned or held by a corporation.[86]  As demonstrated by the Contract, this case involves a corporation and not Choudhri as the buyer of the Property.  Lastly, the Property is not presumed to be residential property because it is greater than one acre in size.[87]  Accordingly, Defendants' first, second, and third counterclaims are dismissed with prejudice.

---

[82] *U.S. v. Little Joe Trawlers, Inc.*, 776 F.2d 1249, 1252 (5th Cir. 1985) (emphasis in original).
[83] *Western-Southern Life Assurance Company v. Kaleh*, 879 F.3d 653, 658–59 (5th Cir. 2018).
[84] *See In re Perry*, 345 F.3d 303, 311 (5th Cir. 2003).
[85] ECF No. 39.
[86] *See, e.g. In re Yamin*, 65 B.R. 938, 942–43 (Bankr. W.D. Tex. 1995) (holding a party who "permits a corporation to hold title for him . . . abandons such homestead interest, even if he continues to occupy that proper . . ..").
[87] "a transaction involving an executory contract for the conveyance of real property used or to be used as the *purchaser's residence or as the residence of a person related to the purchaser*… For purposes of this subchapter, and only for the purposes of this subchapter:

## 2.   *Whether Defendants' Fourth Counterclaim is Expressly Excluded from the Ambit of the Texas Deceptive Trade Practices Act*

Plaintiff asserts that Defendants' fourth counterclaim which alleges specified violations of Section 17.46 of the DTPA should be dismissed because such claims are expressly excluded from the ambit of the DTPA as a matter of law.[88]  The DTPA expressly excludes from its coverage "a cause of action arising from a transaction, a project, or a set of transactions relating to the same *project involving total consideration by the consumer of more than $500,000.00*, other than a cause of action involving the consumer's residence."[89]  Here, the plain language of the Contract reveals that the underlying consideration for the transaction was, at a minimum, $1,500,000.[90]  Additionally, as discussed *supra*, the plain language of the Contract places the transaction involving the Rivercrest Property outside the protections of the DTPA as a matter of law because it involves a commercial property, not a residential property.  Accordingly, Defendants' fourth counterclaim is dismissed with prejudice.

## 3.   *Whether Defendants should be required to replead their eighth counterclaim*

Defendants' eighth counterclaim states that "by seeking actual damages under the August 12, 2013 contract for deed and the October 22, 2016 modification, [Plaintiff] has waived any right to seek liquidated damages."[91]  Defendants state that they "are entitled to a declaratory judgment finding that [Plaintiff has] waived any right to liquidated damages under the August 12, 2013 contract for deed and the October 22, 2016 modification."[92]  Plaintiff contends that this counter-claim fails to specify as to *how* Plaintiff waived any right to liquidated damages, leaving Plaintiff

---

(1) *a lot measuring one acre or less is presumed to be residential property...*"   TEX. PROP. CODE § 5.062, emphasis added.
[88] ECF No. 26 at 6.
[89] TEX. BUS. & COM. CODE § 17.49(g) (emphasis added).
[90] ECF No. 26-1.
[91] ECF No. 25.
[92] *Id.*

to speculate endlessly as to what actions he took to allegedly waive said right.  Plaintiff asserts that Defendants' eighth counterclaim as pled does not provide sufficient notice for Plaintiff to adequately respond and asks the Court to require Defendants to replead.[93]  Defendants respond that the counterclaim does state the theory underlying the claim: by seeking actual damages, Plaintiff waived his right to seek liquidated damages.[94]  As such, Defendants ask this Court to deny Plaintiff's request and find that Plaintiff waived his request for liquidated damages.

Under Texas law, "liquidated damages" ordinarily refer to an acceptable measure of damages that parties stipulate in advance will be assessed in the event of a contract breach.[95]  Under the Texas Business and Commercial Code, "[d]amages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or non-feasibility of otherwise obtaining an adequate remedy."[96]  "Actual damages" are defined by Black's Law Dictionary as "[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses."[97]

Here, in his First Amended Complaint, Plaintiff pleads actual damages in the amount of $704,384.80.[98]  In the prayer of the First Amended Complaint, Plaintiff seeks:

(a) Actual damages;

(b) Exemplary damages;

(c) Court costs;

---

[93] *See* ECF No. 26.
[94] ECF No. 30.
[95] *Garden Ridge, L.P. v. Advance Int'l, Inc.*, 403 S.W.3d 432, 438 (Tex. App. 2013); *see also Liquidated-damages Clause,* Black's Law Dictionary (11th ed. 2019) ("A contractual provision that determines in advance the measure of damages if a party breaches the agreement").
[96] TEX. BUS. & COM. CODE § 2.718.
[97] *Actual Damages*, Black's Law Dictionary (11th ed. 2019).
[98] ECF No. 24 at 6, ¶ 17.

(d) Prejudgment and post-judgment interest at the rate of 5% per annum;

(e) Attorneys' fees;

(f) That the Court enter a take nothing judgment for Defendants; and

(g) And all other relief, in law and in equity, to which Plaintiff may be entitled.

The Contract reads:

> On Buyer's default, Seller may invoke any remedies permitted by law, including declaring the unpaid principal balance and accrued interest immediately due and enforcing their collection, or canceling this contract, declaring Buyer's interest under this contract forfeited, and retaining all money paid by Buyer under this contract as liquidated damages due to the inconvenience and difficulty of determining Seller's actual damages.[99]

As such, Plaintiff is equipped to adequately respond to Defendants' eighth counterclaim because the Contract itself sets forth which remedies "may" be invoked.  Accordingly, Plaintiff's request to require Defendants to replead their eighth counterclaim is denied.

### 4.  *Whether Defendants' affirmative defenses should be struck*

Plaintiff alleges that Defendants' affirmative defenses should be struck under Federal Rule of Civil Procedure 12(f) because Defendants did not plead sufficient facts in support of them.[100] Defendants plead fifteen separate affirmative defenses.[101]  Plaintiff contends that while slightly varied, each is a brief iteration of "Plaintiff's claims are barred, in full or in part, by the doctrine of offset."[102]  Plaintiff alleges that each is a bare recital of the affirmative defense, without an attempt to specify the applicability of each of these defenses to the facts of the case-at-bar.  As such, because these bare statements of law are unmoored to any factual basis to provide Plaintiff with sufficient notice to adequately prosecute his claims, Plaintiff requests that the Court dismiss

---

[99] ECF No. 26-1 at 6.
[100] ECF No. 26 at 6.
[101] ECF No. 25 at 3.
[102] *See id.*; ECF No. 26 at 7.

Defendants' affirmative defenses in their entirety.

> Federal Rule of Civil Procedure 12(f) states:
>
> "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[103]

It is within the Court's discretion to strike a pleading and that authority should be exercised with caution.[104]  Striking a pleading is generally disfavored and should "be granted only when the pleading to be stricken has no possible relation to the controversy."[105]

The Fifth Circuit has held that "[a]n affirmative defense is subject to the same pleading requirements as is the complaint."[106]  In *Woodfield*, the Fifth Circuit determined that the federal pleading standards required that "a defendant . . . must plead an affirmative defense with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced . . . ."[107]  Importantly, this standard was set forth prior to the Supreme Court's influential precedent in *Twombly* and *Iqbal*.  The Fifth Circuit has not revisited its decision in *Woodfield* and as such, whether the plausibility standard of *Twombly* and *Iqbal* apply to affirmative defenses remains unanswered in the Fifth Circuit.[108]  While courts in this Circuit have diverged on the issue,[109] a recent decision noted that "[t]he authority in this District [] weighs heavily in favor of finding that affirmative defenses are subject to a fair notice pleading standard."[110]

---

[103] FED. R. CIV. P.12(f).

[104] *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012).

[105] *August v. Bd. of Pub. Instruction of Scambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962).

[106] *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir.1999).

[107] *Id.*; *see Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 662.

[108] *Vargas v. HWC Gen. Maint., LLC*, 2012 WL 948892, at *2 (S.D. Tex. Mar. 20, 2012).

[109] *Compare United States v. Brink*, 2011 WL 835828, at *3 (S.D. Tex. Mar. 4, 2011); *Vargas v. HWC Gen. Maint., LLC*, 2012 WL 948892, at *2; *Herrera v. Utilimap Corp.*, 2012 WL 3527065, at *2 (S.D. Tex. Aug. 14, 2012) (all applying the plausible pleading standard of Twombly and Iqbal to the pleading of an affirmative defense), *with E.E.O.C. v. Courtesy Building Servs., Inc.*, 2011 WL 208408, at *2 (N.D. Tex. Jan. 21, 2011); *Joe Hand Promotions, Inc. v. HRA Zone, L.L.C.*, 2013 WL 5707810, at *2 (W.D. Tex. Oct. 18, 2013); *Jones v. JGC Dallas, LLC*, 2012 WL 4119570, at *4 (N.D. Tex. Aug. 17, 2012) (all applying only the fair notice standard to the pleading of an affirmative defense).

[110] *RODDIE MORGAN, Plaintiff. v. GOODMAN MANUFACTURING COMPANY, L.P., Defendant.*, 2021 WL 1169390, at *10 (S.D. Tex. Mar. 10, 2021); *See, e.g., Fernandes v. VMOC LLC*, 2018 WL 4901033 (S.D. Tex. Oct. 9, 2018) ("While complaints must satisfy the Iqbal and Twombly standard, the defendants' answer must only 'identify

This Court finds compelling reasons for the application of the traditional fair notice standard to affirmative defenses.[111]  The district court in *U.S. ex rel. Parikh v. Citizens Medical Center* spelled out four reasons in the aftermath of the *Twombly* and *Iqbal* decisions for applying the fair notice pleading standard to affirmative defenses:

> First, *Iqbal* and *Twombly* interpreted the text of Rule 8(a)(2), which requires a statement "showing the pleader is entitled to relief," which differs from Rule 8(c)'s requirement that the defendant "affirmatively state any avoidance or affirmative defense." Second, a defendant only has 21 days to serve an answer. Third, while a motion to dismiss can resolve a case, thereby avoiding discovery entirely, motions to strike only prolong pre-discovery motion practice; as such, raising the standard for pleading affirmative defenses would only encourage more motions to strike.
>
> . . .
>
> [Fourth, the] 'insufficient defense' language in Rule 12(f) has traditionally been read to allow challenges to the legal sufficiency of an asserted defense, as opposed to whether the defense contains sufficient factual matter, [as required under Rule 12(b)(6)].[112]

For these reasons, the Court will apply the fair notice standard for affirmative defenses.

Although the Fifth Circuit in *Woodfield* stated that "in some cases, merely pleading the name of the affirmative defense . . . may be sufficient," the Fifth Circuit found that "baldly 'naming' the broad affirmative defenses of 'accord and satisfaction' and 'waiver and/or release' [fell] well short of the minimum particulars needed to identify the affirmative defense in question and

---

the affirmative defense in question and provide notice of its basis.'" (quoting *Woodfield*, 193 F.3d at 362)); *Trevino v. RDL Energy Servs., L.P.*, 2016 WL 11477431, at *4 (S.D. Tex. July 21, 2016) (applying the fair notice pleading standard to any affirmative defenses); *T.R.M. v. GlaxoSmithKline LLC*, 2015 WL 12551485, at *2 (S.D. Tex. Aug. 21, 2015) ("Affirmative defenses are not subject to the heightened pleading requirements stated in [Twombly].").

[111] *U.S. ex rel. Parikh v. Citizens Med. Ctr.*, 302 F.R.D. 416, 418–19 (S.D. Tex. 2014).

[112] *RODDIE MORGAN, Plaintiff. v. GOODMAN MANUFACTURING COMPANY, L.P., Defendant.*, 2021 WL 1169390, at *10.

thus notify [the plaintiff]."[113]   The Fifth Circuit provided an example when merely pleading the name of an affirmative defense may be sufficient: pleading "contributory negligence" without extensive factual allegations in a negligence action arising from car collision.[114]   Further, in *Moody National CI Grapevine South, L.P. v. TIC Texas Two 23, L.L.C.*, the district court held that the affirmative defenses of: (1) failure of consideration; (2) estoppel; (3) failure to mitigate damages; (4) unclean hands, waiver and laches; (5) fraud; (6) duress; and (7) illegality failed to provide fair notice where the defendants referenced and incorporated the factual allegations in their motion to dismiss, explained more fully the basis for their allegations for their affirmative defenses in their answer, but did so in multiple documents.[115]   The district court held that in order to satisfy the fair notice requirement, the defendants had to amend their answer to contain factual allegations that provide the basis for each affirmative defense because "[plaintiff should] not be required to gather allegations from multiple documents."

Here, Defendants lay out fifteen affirmative defenses.  Of the fifteen, the first affirmative defense asserts that Plaintiff fails to state a claim upon which relief can be granted and the fifteenth asserts that Lee, Jetall, and Choudhri are parties to an enforceable arbitration agreement that encompasses all claims raised by Lee.  The remaining thirteen affirmative defenses state that "Plaintiff's claims are barred, in full or in part, by the doctrine of . . ." followed by the recital of thirteen affirmative defenses numbered two through fourteen.[116]   Unlike the contributory negligence scenario discussed by the Fifth Circuit, the facts of this case are not that clear cut.  Like the defendant in *Woodfield*, Defendants "baldly name the broad affirmative defense" without taking the facts of

---

[113] *Woodfield*, 193 F.3d at 362.

[114] *Id.*

[115] *Moody Nat'l CI Grapevine S., L.P. v. TIC Texas Two 23, L.L.C.*, 2019 WL 5595332, at *2 (S.D. Tex. Oct. 30, 2019) ("Plaintiffs are correct, however, that they should not be required to gather allegations from multiple documents. Therefore, the Court will require Defendants to file an Amended Answer that contains the factual allegations that provide the basis for each affirmative defense.").

[116] ECF No. 25 at 3.

the case into account.[117]  If the defendants' failure to incorporate the facts supporting the affirmative defenses into one document in *Moody National CI Grapevine S., L.P.* was not enough to satisfy the fair notice requirement, Defendants' listing of affirmative defenses numbers two through fourteen is certainly not enough.  Accordingly, the Court finds that Defendants' affirmative defenses two through fourteen as pled fail to meet the fair notice requirement.  However, since the Court's powers under Federal Rule of Civil Procedure 12(f) should be exercised with caution, this Court denies Plaintiff's request to strike Defendants' affirmative defenses because the affirmative defenses may have a possible relation to the controversy.[118]

## 5.  *Whether Defendants should be required to replead their affirmative defenses*

Plaintiff, additionally, or in the alternative, alleges that Defendants should be required to re-plead their affirmative defenses and certain causes of action under Federal Rule of Civil Procedure 12(e) because they are so vague and ambiguous that Plaintiff cannot reasonably prepare a response.[119]

Federal Rule of Civil Procedure 12(e), as incorporated by Federal Rule of Bankruptcy Procedure 7012, states:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.[120]

In deciding whether to grant a Rule 12(e) motion, the court is given considerable discretion.[121]  Rule 12(e) motions are generally disfavored and are granted only when a pleading is so vague and ambiguous that a responsive pleading cannot be framed.[122]  In making such a motion,

---

[117] *See Woodfield*, 193 F.3d at 362 (5th Cir. 1999).
[118] *See United States v. Coney*, 689 F.3d at 379; *see also August v. Bd. of Pub. Instruction of Scambia Cnty., Fla.*, 306 F.2d at 868.
[119] ECF No. 26 at 7.
[120] Fᴇᴅ. R. Cɪᴠ. P. 12(e).
[121] *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir. 1959).
[122] *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999); *see also Davenport v. Rodriguez*, 147 F.Supp.2d 630, 639 (S.D. Tex. 2001) ("[A] motion for a more definite statement…is used to provide a remedy only

the moving party must "point out the defects complained of and the details desired."[123]  However, a motion for a more definite statement may not be used as a substitute for discovery.[124]  This Court previously determined that Defendants' thirteen affirmative defenses failed to satisfy the fair notice standard.  Further, this Court finds that Defendants' listing of affirmative defenses is so vague and ambiguous that Plaintiff is not on proper notice to respond.  The Court will not reward a laissez faire approach to motion practice.  As such, the Court grants Plaintiff's request and Defendants must re-plead affirmative defenses two through fourteen pursuant to Rule 12(e).

### C. Whether Defendants' Request for Leave to File an Amended Answer and Counterclaims Should be Granted

Defendants, in their Response, state that "[i]f the Court grants Plaintiff's Motion in any respect, Defendants respectfully request leave to file an amended answer or counterclaims.[125]  Defendants' request relies upon Federal Rule of Civil Procedure 15, made applicable here through Federal Rule of Bankruptcy Procedure 7015.  Under Rule 15(a)(1), Defendants had 21 days after Plaintiff filed his Rule 12(b)(6) Motion to amend their claims without consent from Plaintiff or a grant of leave from this Court.[126]  Because that deadline passed, Defendants requested leave to amend.  Rule 15 governs motions to amend a complaint made before trial and provides that "[t]he court should freely give leave when justice so requires."[127]  The Fifth Circuit observed that "Rule 15(a) 'evinces a bias in favor of granting leave to amend.'"[128]

Absent a formal motion for leave, a requesting party must set forth with particularity the

---

for an unintelligible pleading rather than a correction for lack of detail.").
[123] FED. R. CIV. P. 12(e).
[124] *See Mitchell*, 269 F.2d at 132.
[125] ECF No. 30 at 6 (Defendants cite to FED. R. CIV. P. 15(a)(2) in stating that "[t]he court should freely give leave when justice so requires.")
[126] FED. R. CIV. P. 15(a)(1).
[127] FED. R. CIV. P. 15(a)(2).
[128] *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).

grounds for the amendment and the relief sought."[129]  This requires a movant to give the court

some notice of the nature of his proposed amendments.[130]  Although no strict guidelines exist as

to what constitutes a sufficient request for leave to amend, it is clear that some specificity is re-

quired.[131]  Additionally, "[i]f proper notice was given, the court may consider such factors as undue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

by amendments previously allowed, undue prejudice to the opposing party, and futility of amend-

ment when deciding whether to grant leave to amend."[132]

      Defendants first requested leave, if necessary, in their response to Plaintiff's Motion to

Dismiss.[133]  Such notice does not constitute undue delay. [134]  As discussed *supra*, the Court finds

that Defendants' current Answer is deficient and must be amended to provide adequate notice to

Plaintiff of the factual allegations that support the basis of affirmative defenses two through four-

teen.  Moreover, Defendants' amended answer would cure the deficiencies complained of by Plain-

tiff and such amended answer may not include any new claims or parties, thereby dispelling any

notion that any amended answer would be in bad faith or prejudicial to Plaintiff.  Additionally,

Defendants have not previously sought amendments to cure deficiencies—this would constitute

Defendants' first amended answer.  Lastly, the amendment would not be futile.  Because the Court

did not strike or dismiss Defendants' affirmative defenses, any proposed amended answer would

---

[129] *United States ex. rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330–31 (5th Cir. 2003) (quoting *United States ex re. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 386–87 (5th Cir. 2003)).
[130] *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016).
[131] *Thomas*, 832 F.3d at 590.
[132] *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311, 314 (5th Cir. 1996) (citations omitted).
[133] ECF No. 30 at 6 ("If the Court grants the Motion in any respect, Defendants respectfully request leave to file an amended answer or counterclaims.").
[134] *See, e.g.*, *Thomas*, 832 F.3d at 588 (allowing the amendment of a complaint after the filing of a motion for summary judgment).

provide Plaintiff 'fair notice' of the defenses that are being advanced.   Therefore, Defendants'
request for leave to file an amended answer consistent with this Court's ruling is granted.[135]

## V.  Conclusion

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED June 16, 2021

_____
Eduardo Rodriguez
United States Bankruptcy Judge

---

[135] ECF No. 25.